## IN THE COURT OF APPEALS OF IOWA

No. 14-0882
Filed August 27, 2014

**IN THE INTEREST OF J.L.M.,**
**Minor Child,**

**C.L., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Emmet County, Ann M. Gales, District Associate Judge.

A mother appeals from termination of her parental rights. **AFFIRMED.**

Melinda L. Roman, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Douglas Hansen, County Attorney, and Rosalise Olson, Assistant County Attorney, for appellee.

Jennifer Bennett Finn of Pelzer Law Firm, Estherville, for father.

Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

A mother appeals from termination of her parental rights to J.L.M. under Iowa Code sections 232.116(1)(d), (f), and (i) (2013). She contends the juvenile court should have granted her an additional six months to achieve reunification and erred in finding the child could not be returned to her care, that termination was in the child's best interest, and that no statutory exception applied.

The child in interest, J.L.M., is eight years old. Prior to the involvement of the Iowa Department of Human Services (DHS), the child resided with her mother and her mother's boyfriend. The child came to the attention of DHS in November of 2012 when a family friend brought her to the hospital with a vaginal rash and bleeding. After a sexual assault examination, medical personnel determined J.L.M. had herpes simplex virus type 2 (HSV-2), a sexually-transmitted disease,[1] and evidence of vaginal assault. The mother and her boyfriend both submitted to testing and both also were positive for HSV-2. The juvenile court ordered the child removed from the mother's home and placed her with a foster family with whom she has resided throughout this case. After seeing a child therapist, the child disclosed the mother's boyfriend had sexually assaulted her repeatedly. The boyfriend was arrested and charged with Sexual Abuse in the Second Degree, a class "B" felony. The district court entered a criminal no-contact order between the boyfriend and the child and her foster

---

[1] The evidence at the termination hearing indicated a child could obtain HSV-2 at birth or through sexual transmission. The mother's and child's medical records indicated neither suffered from HSV-2 at the time of birth. The child also had not suffered from herpes-related symptoms much prior to November 2012.

family. At the time of the termination hearing, the boyfriend was in jail awaiting trial.

Throughout most of the case, the mother refused to believe the boyfriend sexually assaulted the child. The mother repeatedly accused the child of lying and making up stories. The child reported when she told the mother about the abuse, the mother grew angry at her, slapped her in the face, and refused to believe her. The mother continued living with the boyfriend until July 2013—more than seven months after the child was removed from her care—but DHS believed the mother continued to have contact with the boyfriend until September 2013. On one occasion, the mother and boyfriend ran into the child and her foster parents in public and approached them. On another occasion, during a visitation, the mother called the boyfriend on her cellphone and forced the child to speak to him. At a joint therapy session with J.L.M. and the mother, the mother failed to listen to or acknowledge the abuse and J.L.M.'s concerns and feelings. At the termination hearing, the mother stated for the first time she now believed the boyfriend abused the child. The juvenile court stated it, "assign[ed] no credibility to this testimony" and "[the mother's] explanation for this change of heart was nonsensical."

The family case plan required the mother to (1) demonstrate her ability to provide a safe environment for J.L.M., safe from sexual abuse and support J.L.M. through the process of therapy; (2) improve her protective capacities and parenting; and (3) not reside with the boyfriend, establish safe housing, and demonstrate her ability to provide for J.L.M.'s food, housing, and clothing needs. The DHS worker testified the mother made little progress toward reunification.

Throughout the case the mother has been either unemployed or intermittently employed as a housecleaner. Prior to July 2013, she was essentially entirely dependent upon the boyfriend for financial support. Since then, she has relied mostly on churches and charities. Between July 2013, when she stopped living with the boyfriend, and the March 2014 termination hearing, she gave DHS six different home addresses. At the time of the termination hearing, she had secured a one-bedroom apartment but had no furniture for J.L.M. She has no driver's license or vehicle. Her phone number has changed repeatedly, and she has been unreachable on occasion. During her once-per-week visitation, the DHS workers were concerned about her ability to protect and parent the child. She seemed to interact very little with the child and occasionally said inappropriate things to her, for example, threatening to pick J.L.M. up from the foster home and take her back to the boyfriend's home. The DHS worker had little confidence in the mother's ability to provide for J.L.M.'s basic needs.

The DHS workers and the foster parents testified J.L.M. has formed a strong bond with the foster parents and their four children and has been thriving in their home. She considers the foster parents "mom" and "dad" and their children "sisters." The foster parents have provided a safe and loving home and want to adopt J.L.M. They have been open about discussing and acknowledging the abuse she has suffered. She has voluntarily discussed the abuse with them. They have taken particular care to give her appropriate treatment for her herpes outbreaks. J.L.M. has stated on multiple occasions she wishes to remain at "home" with her foster parents and does not think her mother can take care of her or keep her safe.

The State filed a petition to terminate parental rights in November 2013, when J.L.M. had been out of the mother's care for over a year. The hearings on the petition to terminate were March 11 and 12, 2014. The juvenile court terminated the mother's parental rights under Iowa Code sections 232.116(1)(d), (f), and (i). The mother appeals.

We review termination of parental rights proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *Id.* Our primary consideration is the best interest of the child. *Id.* at 776. In determining whether to terminate parental rights, the juvenile court follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a statutory ground for termination exists under Iowa Code section 232.116(1). *Id.* Second, the court must give consideration to the child's best interests. *See* Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 39. Finally, the court need not terminate parental rights if it finds any of the statutory exceptions under Iowa Code section 232.116(3) apply. *P.L.*, 778 N.W.2d at 39.

The mother contends the juvenile court should have granted her additional time to work toward reunification. Under Iowa Code section 232.104(2)(b), the juvenile court may enter an order to continue placement of the child for an additional six months with a view toward reunification. Such order must state "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six month period." Iowa Code § 232.104(2)(b).

The mother does not state why the court should give her an additional six months. Although she secured an apartment and some work, she has no transportation and has little means by which to support herself or a child. Most importantly, she does not acknowledge the abuse J.L.M. has suffered. She demonstrates no protective capacity in that regard. There is nothing in the record to indicate the mother will be able to resume care of J.L.M. within six months.

The mother next argues the court erred in finding there was clear and convincing evidence the child could not be returned to her. Although the juvenile court terminated her parental rights on three separate statutory grounds, the mother challenges only one of the three grounds on her appeal.[2] When the juvenile court terminates parental rights on more than one statutory ground, we need only find termination proper under one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App.1999). The mother's failure to raise the remaining two statutory grounds for termination waives any claim of error related to those grounds. *See Hyler v. Garner*, 548 N.W .2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the appellant for reversal on appeal"). We affirm the juvenile court's order terminating the mother's parental rights pursuant to section 232.116(1)(i).[3]

---

[2] The mother asserts "The Court erred in finding there was clear and convincing evidence the child could not be returned to the mother." This is an element of proof for termination pursuant to Iowa Code section 232.116(1)(f) only. *See* Iowa Code § 232.116(1)(f)(4). Therefore, the mother advances no challenge to termination of her parental rights under Iowa Code sections 232.116(1)(d) or (i).

[3] Although there was no appeal from the termination under section 232.116(1)(d), we decline to affirm on this ground, as the facts clearly show as a matter of law there was no previous adjudication as required in 232.116(1)(d)(1). A summary of selected

The mother next argues the court erred in finding it was in the child's best interest to terminate parental rights. Under Iowa Code section 232.116(2), in considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that

---

clauses of each subsection of 232.116(1) helps illustrate the significance of the requirement for a previous adjudication under (d):

(a) Parent's consent
(b) Child has been abandoned or deserted
(c) Newborn infant voluntary released
(d) Court *previously adjudicated* **CINA**, parents offered or received services, circumstance continues to exist
(e) Child *has been adjudicated* **CINA**, removed for statutory time, parents lack significant and meaningful contact
(f) Child four years or older *has been adjudicated* **CINA**, removed for statutory time, cannot be returned
(g) Child *has been adjudicated* **CINA**, court has terminated as to another child of family, parent unable or unwilling to respond to services, additional delay would not correct
(h) Child three years or younger *has been adjudicated* **CINA**, removed for statutory time, cannot be returned
(i) Child meets CINA definition based on abuse or neglect, significant risk to life or imminent danger, services would not correct in reasonable time.
(j) Child *has been adjudicated* **CINA**, parent imprisoned for crime against child and unlikely to be released for at least five years,
(k) Child *has been adjudicated* **CINA**, parent with mental illness and dangerous, prognosis prevents return of child in reasonable time
(l) Child *has been adjudicated* **CINA**, parent with severe substance abuse and dangerous, and prognosis prevents return of child in reasonable time
(m) Child *has been adjudicated* **CINA**, parent convicted of felony and imprisoned for abuse or neglect of child
(n) Child *has been adjudicated* **CINA**, parent convicted of specified child endangerment crimes, imminent danger to child
(o) Parent convicted of felony sex offense on minor, other circumstances, minimum confinement of at least five years

From the foregoing it is clear that subsection (1)(d) was tailored by the legislature to allow termination without a current CINA determination, instead based on a previous adjudication, where services were offered and circumstances continue to exist. In the present case there was no previous adjudication, only the adjudication that led directly to the filing of the termination petition and the ruling that is the subject of this appeal.

performance may be indicative of the quality of the future care that parent is capable of providing." *A.B.*, 815 N.W.2d at 778 (internal quotations and citations omitted).

The mother does not state why it is not in the child's best interest to terminate her parental rights. Given her unwillingness to believe her boyfriend sexually abused J.L.M., the trauma this has caused to J.L.M., and the extent to which J.L.M. has become integrated into her safe and loving foster family, it is clear her safety; her long-term nurturing and growth; her physical, mental and emotional needs; and her own wishes are best secured by termination of the mother's parental rights.

The juvenile court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply. *P.L.*, 778 N.W.2d at 39. The factors weighing against termination are permissive, not mandatory. *In re A.M.*, 843 N.W.2d 100, 113 (2014). "The court has discretion . . . whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). The mother does not specify which statutory exception she believes applies to her case. The juvenile court did not find any exception applied, and the mother did not request the juvenile court make any such finding. On our de novo review, we find no exception is applicable.

The juvenile court terminated the mother's parental rights in a ruling with an exceptionally detailed and thorough factual analysis. On our de novo review, we affirm.

**AFFIRMED.**